UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| MAXIMO GRAVES individually and on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> JP CONSTRUCTION GROUP INC. <br><br> and <br><br> B&A CONSTRUCTION SERVICES INC. <br><br> Defendants. | Case No. ___3:24cv574___ |

## COMPLAINT

1.      This is a "hybrid" collective/class action suit for unpaid overtime and misclassification under both federal and state law. Plaintiff Maximo Graves ("Plaintiff" or "Class Representative") individually and on behalf of all others similarly situated, bring this action against JP Construction Group Inc. ("JP") and B&A Construction Services Inc. ("B&A") (collectively "Defendants") for failing to pay their employees in accordance with the Fair Labor Standards Act ("FLSA") and Virginia Overtime Wage Act ("VOWA"); and misclassifying their employees as independent contractors in violation of Virginia's misclassification statute.

### I.      SUMMARY OF ACTION

2.      Wage theft is a pervasive issue in the Commonwealth of Virginia, so much so that the General Assembly recently adopted statutes designed to compensate its victims and incentivize employers' compliance with the law. Worker misclassification is another form of wage theft and payroll abuse where workers that should be classified as employees are illegally

1

classified as independent contractors. By misclassifying workers, employers are denying their employees from receiving lawful wages and benefits while simultaneously underfunding social insurance programs like Social Security, Medicaid, unemployment insurance, and workers' compensation.

3.      Wage theft and employee misclassification appear to be widespread in the construction industry as evidenced by numerous lawsuits brought within 4th Circuit by Spanish-speaking laborers alleging that contractors and sub-contractors are supervising the laborers on construction sites where such laborers receive only "straight time" for overtime in violation of federal and state law. *Torres et al. v. Five Star Home Repair LLC, et. al.* No. 3:323-cv-575 (DJN) (E.D Va. 2023); *Rosales et al. v. Rock Spring Contr. LLC*, 2024 U.S. Dist. LEXIS 60970, (E.D. Va. April 2, 2024); *Cruz Ramos et al. v. Precision Walls et al. No. 3:23cv526* (MHL) (E.D Va. 2023); *Jiminez Vega et al. v. Fox Building Group Inc.* No. 3:23cv852 (RCY) (E.D Va. 2023). *See also Salinas v. Commercial Interiors, Inc*., 848 F.3d 125, 129 (4th Cir. Jan 25. 2017).

4.      According to a Joint Legislative Audit and Review Commission (JLARC) report on worker misclassification, "how an employer can reduce payroll costs by an estimated 26 percent by classifying a construction worker … as an independent contractor rather than an employee." JLARC, *Review of Employee Misclassification in Virginia*, 14 (June 2012). The report further identifies that by "misclassifying, employers gain a substantial unfair competitive advantage over employers who comply with tax and labor laws" and in turn this problem has become endemic in the trade to reduce employers' payroll and increase profits. *Id.* at 15.

5.      A common form of misclassification and wage theft in the construction industry is by construction companies who hire workers through labor brokers (hereinafter "Labor Brokers"). Generally, Labor Brokers are to the construction industry what "temp agencies" are to

2

white collar businesses, where such brokers recruit and supply workers for a company which in turn supervises and directs the work of such laborers. Construction companies and their Labor Brokers fail to follow federal and state wage/hour and misclassification laws. Labor Brokers often pay their laborers in cash or check, without any federal or state tax withholdings, and typically pay only "straight time" for overtime. Defendants here have engaged in such conduct, the effect of which is to deny laborers on their construction sites their lawfully owed wages and benefits in violation of federal and Virginia wage and misclassification laws.

6.      This complaint seeks relief for claims for unpaid overtime in violation of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq*., ("FLSA") arising out of work that Plaintiff individually, and others similarly situated performed for the benefit and at the direction of the Defendants.

7.      Graves brings his FLSA claims as collective actions on behalf of himself and those similarly situated ("Plaintiff and the Putative Collective Members") against Defendants. Graves asks that if this case is not certified as a collective action that he be permitted to proceed individually with his claims.

8.      Graves brings his Virginia Overtime Wage Act ("VOWA") claims as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and those similarly situated ("Plaintiff and the Putative Class Members") against Defendants.

9.      Through this proceeding Plaintiff and the Putative Class Members also seek to recover damages associated with their misclassification pursuant to Va. Code § 40.1-28.7:7.

10.     Both the VOWA and state law misclassification claim are brought as class actions under Rule 23 of the Federal Rules of Civil Procedure.

11.     Plaintiff consents to join this lawsuit as reflected in the form attached hereto as

3

Exhibit 1.

## II.    JURISDICTION AND VENUE

12.    This Court has jurisdiction pursuant to 29 U.S.C. § 216(b) and (c) in that the Plaintiff may bring this action in any appropriate United States District Court.

13.    The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367, as these claims are so related to the FLSA claims they form part of the same case or controversy.

14.    Venue is proper for this Court pursuant to 28 U.S.C. § 1391 and Local Rule 2(b) because a substantial part of the events and omissions giving rise to this lawsuit have taken place in the Richmond Division of the Eastern District of Virginia, and because Defendant B&A's principal place of business is located in the Richmond Division.

15.    Defendants are subject to personal jurisdiction in the Commonwealth of Virginia.

## III.    PARTIES

16.    Plaintiff and Putative Class/Collective Members performed labor in the Richmond, Virginia area within the last three years for the benefit of, and at the direction and under the supervision of Defendants. Plaintiff and Putative Collective Members were "employees" of Defendants as defined in the FLSA.

17.    Graves is a resident of Virginia and was employed as a drywall mechanic from October 2023 to the present on two jobs, the first in Petersburg and then Mechanicsville, Virginia by JP and B&A.

18.    Defendant JP Construction Group Inc. is a company with its principal office located in Woodbridge (Prince William County), Virginia. JP supervised certain construction sites, and the labor performed on such sites, including the work of Plaintiff and Putative Class

Members.

19.     Defendant B&A Construction Services Inc. is a is a company with its principal office located in Chesterfield, Virginia and acts as a Labor Broker for JP. As a Labor Broker, B&A recruits and supplies JP with laborers to perform the labor associated with the framing, drywall, and ceiling work for which JP is paid by the general contractor. JP pays its laborers through B&A, with JP paying B&A a flat hourly rate for each man hour that the laborer works.

20.     Although Graves and the Putative Class/Collective Members worked more than forty (40) hours for Defendants in one or more weeks, they received a flat hourly rate (or "straight time") for all hours worked, and not, overtime compensation as required by the FLSA and VOWA.

## IV.     FACTS

21.     Plaintiff and the Putative Class/Collective Members, which includes drywall mechanics, drywall finishers and associated laborers, were individually hired to work for Defendants on the Virginia State University project, located at 209102 University Ave., Petersburg, VA 23806 ("VSU Project") and the Virginia Department of Forensic Science, located at 8850 Times Dispatch Blvd. Mechanicsville, VA 23116 ("VDFS Project").

22.     Both projects are State-funded projects.

23.     Plaintiff started at the VSU Project in October 2023 and around February 2024, he was informed that he would be working on the VDFS Project.

24.     Skanska was the General Contractor responsible for the construction projects. Skanska subcontracted some of its work on the projects to Defendants.

25.     Defendant JP is a sub-contractor who contracts with general contractors on specific projects including those named below:

26.    JP is also the subcontractor on the:

    a.    Virginia Hospital Center Expansion, located at 1701 N. George Mason Dr. Arlington VA 22205;

    b.    the Wegmans Store, located at 11950 Hopper St. Reston, VA 20191;

    c.    Loudoun County Courthouse expansion, located at 18 E Market Street, Leesburg, VA 20178;

    d.    George Mason High School, located at 7124 Leesburg Pike, Falls Church, VA 22043;

    e.    George Mason University Robinson Hall & Harris Theatre Expansion, located at 4441 George Mason Blvd. Fairfax, VA 22030; and

    f.    Kingstowne Consolidated Facility, located at 7130 Silver Lake Blvd. Alexandria, VA 22315.

27.    On information and belief, Defendant JP contracted with one or more Labor Brokers to provide laborers to perform the labor associated with the framing, drywall, and ceiling work for which Defendant JP was paid by the general contractors on numerous jobs in Virginia including the above. Plaintiffs and others similarly situated were laborers who performed such work for the benefit of JP and its Labor Broker(s).

28.    JP provided Plaintiff and the Putative Class/Collective Members, with personal protective equipment including a hardhat, gloves & glasses.

29.    JP provided extension cords, electric sanders, safety harnesses, gloves, sanding machines and ladders for the Plaintiff and the Putative Class/Collective Members to use. JP also supplied power actuated fasteners, power tools, electric sanders, hammer drills, chop saws and screws, sponges, and sanding blocks.

30.     JP also provided Plaintiff and the Putative/Collective Class Members with access to scissor lifts to use in order to do their jobs.

31.     Plaintiff and the Putative Class/Collective Members brought their own lazer and screw gun.

32.     JP also provided all construction materials, like framing, drywall, lumber, and other construction materials, necessary for Plaintiff and the Putative Class/Collective Members to do the construction work required.

33.     Neither Plaintiff nor the Putative Class/Collective Members were permitted to perform any work for JP without JP providing safety personnel on the jobsite. Said safety personnel would supervise and ensure all safety requirements were being met to JP's satisfaction.

34.     Ray Ecejuri, an employee of JP, would conduct safety meetings that Plaintiff was required to attend.

35.     On the job sites where Plaintiff worked, he and the Putative Class/Collective Members were required to sign into the safety meetings and to sign a JP "safety" sheet.

36.     JP contracted with B&A, a Labor Broker, to provide laborers to perform the labor associated with the framing, drywall, and ceiling work on the VSU and VDFS projects, for which JP was paid by Skanska.

37.     On information and belief, JP contracted with other Labor Brokers and JP employees performed similar roles on other job sites in Virginia.

38.     Plaintiff and the Putative Class/Collective Members were laborers who performed such work for the benefit of JP and its Labor Broker.

39.     JP determined the nature, location, work hours, and extent of the construction work that Plaintiff, and those similarly situated, were to perform each day.

40.    JP's foreman, Jose Elias Reyes and Project Manager, Richard Parada gave directions.

41.    Graves was employed to do drywall finishing for JP through Labor Broker B&A.

42.    Plaintiff was contracted to receive $23.00 per hour.

43.    The Plaintiff received a weekly paycheck from B&A that did not have any deductions taken out.

44.    On information and belief, other Labor Brokers utilized by JP also do not take deductions from workers' paychecks.

45.    On at least three occasions, Plaintiff worked in excess of forty (40) hours per week.

46.    The Putative Class/Collective Members worked similar hours through their employment with Defendants, totaling more than forty (40) hours per week.

47.    Despite working more than forty (40) hours per week, Plaintiff and the Putative Class/Collective Members did not get paid their overtime at a time and a half rate for hours worked over forty (40).

48.    Plaintiff was not employed in any bona fide executive, administrative, or professional capacity. The Putative Class/Collective Members were not employed in any bona fide executive, administrative, or professional capacity.

49.    Plaintiff and the Putative Class/Collective Members performed blue collar, manual work.

50.    Based on the nature of the job duties of Plaintiff and the Putative Collective Members, there is no FLSA or VOWA exemption that applies to preclude them from being paid overtime at one and one-half times their regular rate of pay for all hours worked in excess of

forty (40) per week.

51.    Instead, Defendants paid only "straight time" for overtime, for example: for the check dated January 16, 2024 (for the pay period of January 8-14), Plaintiff worked forty-nine (49) hours. He received a check for $1,127.00. He was paid $23.00 per hour for 49 hours (49 hours x $23.00 per hour = $1,127.00). See **Exhibit 2**. No deductions were taken out of his paycheck, and no premium was paid for his overtime hours.

52.    Graves should have received a total of $1,230.50, or (40 hours x $23.00 per hour) + (($23.00 per hour x 1.5) x (9 overtime hours)), if Defendants had paid his overtime properly.

53.    Additionally, when Defendants moved Graves between the VSU Project to the VDFS Project within a single week, it issued him two different paychecks without paying him any overtime premium. Graves worked for Defendants for a total of forty-eight (48) hours for the week period of February 11-17, 2024. The first check Graves received for this work week was on February 20, 2024 for forty (40) hours of work in the amount of $920.00. The second check was issued on February 21, 2024 for eight (8) hours of work in the amount of $184.00. All hours were paid at his "straight time" rate of $23.00 rather than at his overtime rate of $34.50, resulting in an underpayment of $92.00. See **Exhibit 3**.

54.    Graves inquired as to why he was being paid for the additional hours in excess of forty (40) at his straight time rate rather than his overtime rate. The Labor Broker told him that he was not paid overtime because he was moved to a different job midway through the week so the eight (8) hours did not count as overtime. However, both jobs were under the direction of both Defendants.

55.    Defendants knew Plaintiff and the Putative Class/Collective Members worked overtime hours without getting paid a proper overtime premium.

56.     Defendants willfully violated the and VOWA by knowingly failing to pay the full amount of overtime wages due.

57.     At all relevant times Defendants intended to deprive Plaintiff and the Putative Class/Collective Members of the overtime pay to which they were entitled or acted with reckless disregard for the rights of Plaintiff and the Putative Class/Collective Members

58.     Defendants' violation of the FLSA and VOWA rights of Plaintiff and the Putative Class/Collective Members is continuing and ongoing.

59.     Every day that he worked, Plaintiff would sign in on an "Employee Sign in Sheet". The sheet had JP Construction written on the top and listed out JP Construction Foreman, Project Manager (PM) and Assistant Project Manager (APM).

60.      The sign in sheet also listed the project's name and the Labor Broker's name.

61.     On information and belief, similar sign-in sheets were utilized on JP's other sites in Virginia.

62.     On the VDFS Project, JP Construction's employee, Fidel G. was listed as the site foreman, Felipe D. was listed as the JP Construction Project Manager and the JP Construction Assistant Project Manager (APM) listed was Juan M.

63.     On the VSU Project, JP Construction's employee, Jose Elias Reyes was listed as the site foreman, Richard Parada was listed as the JP Construction Project Manager and the JP Construction Assistant Project Manager (APM) listed was Christian J.

64.     JP and B&A both tracked the hours worked on the VSU and VDFS Projects.

65.     JP, specifically Jose Elias Reyes and Richard Parada, could hire and fire Plaintiff and the Putative Class/Collective Members and could also delegate to B&A to hire and fire Plaintiff and the Putative Class/Collective Members.

66.     JP and B&A both employed foremen and supervisors on site.

67.     Defendants did not issue a W2 or 1099 to Plaintiff or the Putative Collective/Class Members.

68.     The economic reality of the relationship between the Defendants and Plaintiff and the Putative Class/Collective Members is that of an employment relationship. Plaintiff, and those similarly situated, are, and have been, misclassified as independent contractors by JP and B&A. For example:

      a.     JP and its Labor Brokers closely monitor and direct the day-to-day operation of Plaintiff and the Putative Class/Collective Members;

      b.     Plaintiff and the Putative Class/Collective Members have no discretion over their duties, responsibilities and daily tasks;

      c.     JP and its Labor Brokers retain the right to assign laborers to specific jobs and to define aspects of those jobs;

      d.     On information and belief, JP or its general contractor determines the rates for labor paid by the contractor to JP then to its Labor Brokers;

      e.     JP and its Labor Brokers determine the amounts paid to Plaintiff and the Putative Class/Collective Members;

      f.     JP and its Labor Brokers control all aspects of the availability for profit; and

      g.     JP and its Labor Brokers have massive oversight as to actual conduct of the work to be performed such as requiring safety equipment, specific tools and practices of the trade.

69.     JP is/was the employer or a joint employer of the current Plaintiff and the Putative Class/Collective Members.

70.    JP and its Labor Brokers jointly employ Plaintiff and the Putative Class/Collective Members.

71.    JP and its Labor Brokers employ or jointly employ Plaintiff and the Putative Class/Collective Members because they pay or paid Plaintiff and the Putative Class/Collective Members for the work they performed.

72.    JP and its Labor Brokers are joint employers of Plaintiff and the Putative Class/Collective Members because, among other reasons, they jointly determine, share, or allocate the power to:

        a.    direct, control, or supervise the Plaintiff and the Putative Class Members;

        b.    hire or fire the Plaintiff and the Putative Class Members; and

        c.    modify the terms or conditions of the Plaintiff and the Putative Class/Collective Members' employment.

73.    In addition, JP and its Labor Brokers are joint employers of Plaintiff and the Putative Class/Collective Members because, among other reasons, they jointly determine, share, or allocate responsibility over functions ordinarily carried out by an employer, such as handling payroll, or providing the equipment, tools, or materials necessary to complete the work. For example, JP provides heavy tools, equipment and all materials for Plaintiff and the Putative Class/Collective Members to complete the work. The Labor Broker administers the payments to the Plaintiff and the Putative Class/Collective Members for their work. Both JP and B&A provided foremen and safety supervisors on site.

74.    Defendants willfully violated the FLSA and VOWA by knowingly failing to pay overtime.

75.    At all relevant times the Defendants intended to deprive Plaintiff and the Putative

Class/Collective Members of overtime pay to which they were entitled or acted with reckless disregard for the rights of Plaintiff and the Putative Class/Collective Members.

76.     The Defendants' violations of the FLSA and VOWA rights of the Plaintiff and the Putative Class/Collective Members is continuing and ongoing.

## V.     COLLECTIVE ACTION ALLEGATIONS FOR FLSA CLAIMS

77.     Plaintiff files this statutorily authorized collective action pursuant to 29 U.S.C. § 216(b) as a Representative Plaintiff.

78.     For purposes of the collective claims, Plaintiff brings his FLSA claims on behalf of himself and all past and present laborers of JP who, within the three years prior to filing, were hired through Labor Brokers to provide framing, drywall, ceiling, and similar construction labor in Virginia for the benefit of JP and who were paid "straight time" for all hours worked including those in excess of forty (40) hours.

79.     Plaintiff is aware of other laborers who are similarly situated. Plaintiff estimates that there are over 40 (forty) laborers who fit the definition above.

80.     Plaintiff believes and herein alleges that the B&A has been used by JP within the past three years, and continuing, as part of a common plan or scheme to avoid paying overtime wages on construction projects.

81.     Upon information and belief, Plaintiff and the Putative Collective Members were paid, and continue to be paid, under a similar pay scheme which deprived them of overtime pay.

82.     Upon information and belief, these laborers perform, and have performed, work which entitles them to payment of overtime compensation that they have not received.

83.     Upon information and belief, JP and B&A compensated, and continue to compensate, those similarly situated to Graves on a uniform compensation basis.

84.     JP's policy of using a Labor Broker to avoid paying overtime amounts to a willful or reckless disregard of its employees' rights under the FLSA.

85.     The Labor Brokers' policy of not paying the entire overtime owed amounted to a willful or reckless disregard of the employees' rights under the FLSA.

86.     Defendants had no good faith basis to believe that these employees were not entitled to overtime under the FLSA.

87.     Plaintiff  Graves asserts that Defendants' willful disregard of the overtime laws described herein entitles Plaintiff individually and the Putative Collective Members to the application of the three (3) year limitations period.

88.     At all relevant times, Plaintiff and the Putative Collective Members have been entitled to the rights, protections, and benefits provided under the FLSA.

## VI.     <u>CLASS ACTION ALLEGATIONS</u>

### A.     Class Definition

89.     Plaintiff, the Rule 23 Class Representative, seeks to maintain claims pursuant to Va. Code §§ 40.1-28.7:7, 40.1-29, and 40.1-29.2, individually and on behalf of the class of:

> All current and former laborers who worked for JP through a Labor Broker, who were classified as independent contractors, who were assigned and/or worked on construction sites within Virginia, and who were paid "straight time" for all hours worked in excess of forty (40) hours in any week since July 1, 2021.

90.     On information and belief, Plaintiff and all others similarly situated were made to assent to the same pay scheme, the same [mis]classification as an Independent Contractor, and the same work requirements.

### B.     Efficiency of Class Prosecution of Common Claims

91.     Certification of current and former laborers is the most efficient and economical means of resolving the questions of law and fact which are common to the claims of the Plaintiff

and the Putative Class Members. Conversely, proceeding on an individual basis will require the filing of potentially scores of duplicative individual suits which will waste judicial time and resources and create the risk of inconsistent or varying adjudications of common issues.

**C.    Numerosity and Impracticality of Joinder**

92.    On information and belief, the class which the Class Representatives seek to represent is greater than forty (40) individuals such that joinder is impracticable.

**D.    Common Questions of Law and Fact**

93.    Defendants' use of laborers and the propriety of their pay scheme(s) and classification of laborers presents common issues of fact in this matter. Moreover, the challenged pay and classification practices apply uniformly and present identical questions of law and fact with respect to the Class Representatives and those whom they seek to represent.

**E.    Typicality of Claims and Relief Sought**

94.    The claims of the Class Representative are typical of those of the class members as a whole in that their claims are based on the same contract and business and compensation practices. The relief sought by the Class Representative for unpaid overtime wages and misclassification compensation is also typical of the relief which is sought on behalf of the proposed class.

**F.    Adequacy of Representation**

95.    Plaintiff is an adequate class representative for the class. His interests are co-extensive with those of the members of the proposed class he seeks to represent.  Plaintiff has an intimate knowledge of his duties and the Defendants' pay practices. He is committed to being a representative of the class and has retained counsel experienced in prosecuting class action employment cases to protect the interests of the class.

G.    **Rule 23(B)(3) Requirements**

96.    Common questions of law and fact predominate over any questions affecting only individual members because the basis of the claims herein is the common application of the nonpayment of full overtime wages, as well as Defendants' practice of treating their laborers as independent contractors.  Such policies and practices are applicable to all class members.

97.    A class action is superior to other available methods for adjudicating the controversy because other methods would involve the filing of numerous individual claims that are based on the same centralized scheduling and compensation facts and the same legal issues regarding same. Numerous individual cases similar to Plaintiff's would clog the Court's docket and waste judicial time and resources. Moreover, multiple individual cases based on the same legal issue(s) could lead to inconsistent or varying adjudications of the same issue(s).

98.    The Putative Class Members do not have a substantial interest in individually controlling a separate action because any such claim would be based on the same centralized contractual compensation practices and their recovery in either an individual or class action will be based on the amount of wages, overtime compensation, or other damages that each Plaintiff has been denied by Defendants.

99.    The Class Representative and counsel are not aware of any other litigation concerning the controversy that has already begun by proposed class members within the Commonwealth of Virginia.

100.    It is desirable to concentrate the claims in this forum because the employment practices complained with respect to the Class Representatives occurred in this forum.

101.    Class Representatives and counsel do not foresee any substantial difficulties in managing a class action and counsel is experienced in managing class action litigation in this

forum.

## COUNT I
### Violation of the FLSA: Failure to Pay Overtime Compensation, 29 U.S.C. § 207
### (On Behalf of Plaintiff and FLSA Collective)

102.    This count arises from Defendants' violation of the FLSA by failing to pay the correct overtime to Graves and the Putative Collective Members when they worked over forty (40) hours in individual workweeks.

103.    Graves and the Putative Collective Members were not exempt from the overtime provisions of the FLSA.

104.    Graves and the Putative Collective Members were directed by Defendants to work, and did work, over forty (40) hours in one or more individual workweeks.

105.    Defendants violated the FLSA by failing to pay the full amount of overtime to Graves and the Putative Collective Members, at one-and-one-half times their regular rate of pay, when they worked over forty (40) hours in one or more individual workweeks.

106.    Defendants' failure to pay Graves and the Putative Collective Members an overtime premium for all time worked over forty (40) hours in a workweek was willful.

## COUNT II
### Misclassification of Workers: Violation of Va. Code § 40.1-28.7:7
### (On Behalf of Plaintiff and the Putative Class)

107.    Va. Code § 40.1-28.7:7 permits misclassified workers to bring an action for damages against violating employers.

108.    Plaintiff, and others similarly situated, performed drywall finishing and associated tasks for Defendants for remuneration.

109.    Defendants misclassified Plaintiff, and others similarly situated, as independent contractors despite not meeting the "Internal Revenue Service guidelines" for evaluating

independent contractor status.

110.    Plaintiff, and others similarly situated, are entitled to damages caused by such misclassification, including wages, salary, employment benefits, including expenses incurred by the employee that would otherwise have been covered by insurance, and impermissible chargebacks or deductions or other compensation lost, plus reasonable attorneys' fees and costs incurred in bringing this action.

### COUNT III
**Failure to Pay Overtime under VOWA: Violation of Va. Code § 40.1-29.2**
**(On Behalf of Plaintiffs and the Putative Class)**

111.    Defendants have knowingly violated the Virginia Overtime Wage Act, Va. Code § 40.1-29.2, by failing to pay overtime to Plaintiff and the Putative Class Members when they worked over forty (40) hours in individual workweeks.

112.    Plaintiff and all others similarly situated, were not exempt from the overtime provisions of Va. Code § 40.1-29.2.

113.    Plaintiff and the Putative Class Members are and were directed by Defendants to work, and did work, over forty (40) hours in one or more individual workweeks.

114.    Defendants paid Graves and others similarly situated, only a portion of their overtime compensation.

115.    Defendants violated Va. Code § 40.1-29.2 by failing to pay overtime to Graves and others similarly situated, at one-and-one-half times their regular rate of pay when they worked over forty (40) hours in one or more individual workweeks.

116.    Defendants' failure to pay Graves and the Putative Class Members an overtime premium for all time worked over forty (40) hours in a workweek was willful or knowing.

117.    Graves brings this action on behalf of the class for all violations alleged herein

commencing July 1, 2021, and ongoing.

118.    Graves and others similarly situated are entitled to recover payment of their unpaid overtime wages, plus an equal amount of liquidated damages, prejudgment interest, and attorney's fees.

119.    Moreover, pursuant to Va. Code §§ 40.1-29(J) and 40.1-29.2, in effect from July 1, 2021 to June 30, 2022, Defendants' violation was a "knowing" one, thus entitling Graves and others similarly situated to recover triple damages for overtime violations occurring during such time period.

## Relief Requested

Wherefore, Plaintiff request the following Relief against Defendants, individually, collectively, jointly, and severally:

a)    An order conditionally certifying a group or groups of Putative Collective Action Members and approving a notice to be sent to all such members, notifying them of this lawsuit and their ability to file a written consent to join in this action without threat or fear of reprisal;

b)    Certification of the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure;

c)    Judgment against all Defendants for violations of the overtime provisions of the FLSA and VOWA;

d)    All unpaid wages and overtime damages due to Plaintiff and members of the FLSA collective and the state law class action claims;

e)    All unpaid wages, salary, or benefits due to the Class as result of Defendants' misclassification scheme pursuant to Va. Code § 40.1-28.7:7;

f)    Judgment that Defendant's violations of overtime laws were willful;

g)    Liquidated damages equal to the unpaid overtime and/or unpaid wage compensation due under FLSA and VOWA;

h)    Treble damages under Va. Code § 40.1-29(J) for all claims where such relief is available;

i)    Pre-judgment and post-judgment interest;

j)    Reasonable attorneys' fees and costs including expert fees expended in the prosecution of this case and the investigation that preceded it;

k)    Leave to amend to bring additional claims and/or parties, including but not limited to allowing all named and opt-in plaintiffs to proceed with their individual claims should this case not proceed as a collective or class action for any reason; and

l)    Any and all further relief permissible by law.

## Demand for Jury Trial

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby requests a TRIAL BY JURY for all claims and issues so triable.

Respectfully submitted,
**Maximo Graves,** Individually and on behalf of all others similarly situated,

Plaintiff

By: */s/ Craig Juraj Curwood*
Craig Juraj Curwood (VSB No. 43975)
Zev H. Antell (VSB No. 74634)
Samantha R. Galina (VSB No. 96981)
Butler Curwood, PLC
140 Virginia Street, Suite 302
Richmond, VA 23219
Telephone: (804) 648-4848
Fax: (804) 237-0413

Email: craig@butlercurwood.com
   zev@butlercurwood.com
   samantha@butlercurwood.com

*Attorneys for Plaintiff*